UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SECURITIES INVESTOR PROTECTION CORP., | ) ) ) | |
| Plaintiff, | ) ) | Adv. Proc. 6:08-ap-00145-KSJ |
| vs. | ) ) | |
| NORTH AMERICAN CLEARING, INC., | ) ) | |
| Defendant. | ) ) ) ) | |

| | | |
|---|---|---|
| ROBERT N. GILBERT, Trustee | ) ) | |
| Plaintiff, | ) ) | Adv. Proc. 6:10-ap-00151-KSJ |
| vs. | ) ) | |
| RICHARD GOBLE, | ) ) | |
| Defendant. | ) ) ) | |

## **MEMORANDUM OPINION**

Plaintiff Robert N. Gilbert, Trustee of the estate of North American Clearing, Inc. (NACI), seeks to recover payments made by NACI to Richard Goble, NACI's owner. In a seven-count Complaint, the trustee alleges the payments from NACI to Goble, totaling $526,979.19[1] (the "Payments"), are actually and constructively fraudulent transfers recoverable pursuant to §§ 548 and 550 of the Bankruptcy Code[2] and the Florida Uniform Fraudulent Transfer Act (FUFTA). The trustee further alleges that NACI was damaged in the amount of the Payments as a result of Goble's breach of fiduciary duties to NACI and that the Payments were unlawful distributions pursuant to Fla. Stat. § 607.0834.

---

[1] Doc. No. 46, Exhibit A.
[2] All references to the Bankruptcy Code are to Title 11 of the United States Code.

The parties have completed all discovery.  Defendant Goble filed, and the Court has taken under advisement, the following pre-trial motions: (1) Motion to Exclude Plaintiff's Expert Thomas Santoro,[3] (2) Motion for Final Summary Judgment,[4] (3) Motion to Strike Plaintiff's Exhibit A in Opposition to Defendant's Motion for Summary Judgment,[5] (4) Motion to Strike Declarations submitted by Plaintiff in Opposition to Defendant's Motion for Summary Judgment,[6] and (5) Motion in Limine for an Adverse Inference Due to Spoliation of Evidence.[7]

The Court grants defendant's Motion to Strike Plaintiff's Exhibit A in Opposition to Defendant's Motion for Summary Judgment.[8]   The Court denies all other relief sought by defendant.

<u>Defendant's Motion to Exclude Plaintiff's Expert is Denied</u>

Defendant first seeks to exclude plaintiff's expert witness Thomas Santoro, arguing he is not qualified to testify about capitalization of a regulated clearing firm such as NACI and his opinions are not based on his own conclusions but rather on those of non-experts.  The Court has reviewed Santoro's resume, expert report, and deposition and concludes Santoro is qualified to testify and his testimony likely is relevant.  Defendant's arguments primarily go to the weight and credibility of Santoro's testimony, not its admissibility.  Because the standard provided in Federal Rule of Evidence 702[9] is satisfied, Santoro will be allowed to testify at trial.

Defendant argues Santoro is not qualified because he lacks experience auditing or working for a brokerage or clearing firm, is not licensed by Financial Industry's Regulatory

---

[3] Doc. No. 148.
[4] Doc. No. 149.
[5] Doc. No. 181.
[6] Doc. No. 182.
[7] Doc. No. 177.
[8] Doc. No. 181.
[9] The Rule states:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Authority (FINRA) or the Securities and Exchange Commission (SEC), and has not testified as an expert on FINRA issues.  Santoro, however, does have knowledge of the relevant FINRA and SEC regulations.  Moreover, Santoro is not offered as an expert in these rules and regulations. Instead, he is offered as an expert witness on NACI's undercapitalization.  Whether NACI was in compliance with FINRA and SEC regulations may be probative of the adequacy of its capitalization, but it is not determinative.

Santoro is qualified to provide an opinion as to the undercapitalization of NACI's business at the time of the Payments.  He has twenty-five years experience in financial matters, is a Certified Public Accountant and Certified Management Accountant.  He has served as Chief Restructuring Officers for Chapter 11 debtor companies.  He has been an expert witness in other bankruptcy cases, including fraudulent transfer cases.  He can opine as to the status of NACI's capitalization at the time of the Payments and whether, at those points in time, NACI could pay its debts, from its own assets, as those debts came due.  Santoro's opinion is relevant to plaintiff's case because plaintiff can demonstrate the Payments were constructively fraudulent transfers by establishing NACI received less than reasonably equivalent value in exchange for the Payments and made the Payments at a time NACI "was engaged in business . . . for which any property remaining with the debtor was unreasonably small capital."[10]

Defendant also argues Santoro's reliance on the financial report provided to him by individuals who work for Financial Industry Technical Services (FITS) is improper because Santoro did not perform the audits himself and cannot vouch for the accuracy of the information provided him.  This is not a proper basis for excluding Santoro's testimony.  An expert may rely on facts or data provided by others to reach his opinion.[11]  Those facts or data need not be admissible, so long as they are "of a type reasonably relied upon by experts in the particular field

---

[10] 11 U.S.C. § 548(a)(1)(B)(ii)(II).
[11] Fed. R. Evid. 703; *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985).

in forming opinions or inferences upon the subject."[12]  If Santoro testifies that the data provided by FITS—including NACI's financial statements and the list of money market redemptions between 2006 and May 2008 that were not initiated by NACI customer requests (compiled by FITS)—is the type of information on which accountants would reasonably rely in forming opinions about capitalization of businesses like NACI, he may testify as to his conclusions. Whether the information Santoro relied upon in forming his opinion is accurate is a proper line of inquiry for defendant's counsel at trial.  As defendant himself states in his motion, "[v]igorous cross-examination [is one] traditional and appropriate means of attacking shaky but admissible evidence."[13]  Defense counsel will have the opportunity at trial to examine Santoro and the FITS employees on whose work he relied in an effort to demonstrate any errors in their data or conclusions.

Although Santoro's reliance on *facts and data* provided by others is proper, he cannot base his testimony on the *opinions* of FITS employees.  "Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."[14]  If and when Santoro's testimony is offered at trial, the Court will rule on all contemporaneous objections to his testimony.  Defendant's Motion to Exclude Expert Thomas Santoro[15] is denied.

<u>Defendant's Motion for Final Summary Judgment is Denied</u>

Defendant moves for final judgment on the entire Complaint, arguing that each of the seven counts fails because plaintiff cannot prove NACI was undercapitalized and because NACI received reasonably equivalent value for the Payments.

Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine

---

[12] Fed. R. Evid. 703.

[13] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596,  113 S. Ct. 2786, 2798 (1993).

[14] *American Key*, 762 F.2d at 1580.

[15] Doc. No. 148.

issue as to any material fact and the moving party is entitled to judgment as a matter of law."[16]
The moving party has the burden of establishing the right to summary judgment.[17] "When a
motion for summary judgment has been made properly, the nonmoving party may not rely solely
on the pleadings, but . . . must show that there are specific facts demonstrating that there is a
genuine issue for trial."[18] Conclusory allegations by either party, without specific supporting
facts, have no probative value.[19]

In determining entitlement to summary judgment, "facts must be viewed in the light most
favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[20] "Where
the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,
there is no genuine issue for trial."[21] A material factual dispute precludes summary judgment.[22]

Defendant's motion is denied for two reasons. First, the factual issues of whether NACI
was undercapitalized and whether NACI received reasonably equivalent value for the Payments
are relevant only to counts I and IV of the Amended Complaint, the counts that allege
constructively fraudulent transfers. They are not relevant to the other counts asserting actual
fraudulent transfers, breach of fiduciary duty, or improper distributions. For this reason,
defendant's motion for summary judgment is denied as to all the counts other than I and IV.

Second, as to the constructively fraudulent transfer counts, the evidence in the record
presents genuine issues of material fact as to whether: (1) NACI was undercapitalized at the time
it made the Payments, and (2) whether NACI received reasonably equivalent value in exchange
for the Payments.

Defendant's argument that the Payments must have caused any undercapitalization in
order for the trustee to recoup them pursuant to a constructive fraud theory is incorrect. The law

---

[16] Fed. R. Civ. P. 56.
[17] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[18] *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).
[19] *Evers v. General Motors Corp.* 770 F.2d 984, 986 (11th Cir. 1985).
[20] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).
[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).
[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986).

is clear that transfers made contemporaneously with undercapitalization are actionable, even if the transfers did not directly cause the undercapitalization.[23]

Further, the Court rejects defendant's alternative argument that, because NACI was in compliance with SEC rules and regulations, the company was adequately capitalized, as a matter of law. Whether NACI was, indeed, in compliance with SEC regulations raises a mixed question of fact and law. Sufficient factual disputes exist that NACI was not in compliance with all rules and regulations such as SEC Rule 15c3-3.

Moreover, mere compliance with SEC regulations does not alone demonstrate adequate capitalization for purposes of fraudulent transfer law. Defendant cites no legal authority for his assertion, and he fails to account for the authority stating undercapitalization is question of fact to be determined by a case-by-case review of a debtor's capital structure.[24]  "This analysis requires a court to examine the ability of the debtor to generate enough cash from operations and sales of assets to pay its debts and remain financially stable."[25]  The evidentiary record—including evidence that, between May 2006 and May 2008, NACI liquidated $220 million in customers' money market positions other than at customer request—presents genuine issues of fact as to whether NACI was able to operate its business, pay its debts, and remain financially stable at the time of the Payments.

Factual disputes also exist as to whether NACI received reasonably equivalent value for the Payments. Defendant's credit card bills paid by NACI demonstrate the company paid for a cruise on Disney Cruise Lines, modeling school classes, XM Satellite Radio, and tickets to

---

[23] *See In re Suburban Motor Freight, Inc.*, 124 B.R. 984, 998-99 (Bankr. S.D. Ohio 1990) ("After meeting the test of § 548(a)(2)(A), the trustee must establish that the transfers and obligations resulted in, or were contemporaneous with, one of three triggering events with respect to Suburban's financial condition: (1) insolvency; (2) unreasonably small capital; or (3) an intent to incur debts beyond its ability to pay as such debts matured."); *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127, 137 (Bankr. D. Mass. 1989) ("Section 548 also requires the Debtor to prove that the transfers and obligations resulted in, or were contemporaneous with, and one of three financial circumstances concerning the Debtor: (i) 'insolvency,' (ii) 'unreasonably small capital,' or (iii) 'that the Debtor "intended to incur, or believed . . . . it would incur debts that would be beyond the debtor's ability to pay as such debts matured."'").
[24] *Suburban Motor Freight,* 124 B.R. at 998-99 (collecting cases).
[25] *Id.*, 124 B.R. at 999 (citing *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127, 137 (Bankr. D. Mass. 1989)).

several sporting and cultural events. The nature of these Payments presents the factual question whether NACI received reasonably equivalent value in exchange.

Defendant's Motion for Summary Judgment[26] is denied because material factual disputes exist precluding summary judgment as a matter of law.

**Defendant's Motion to Strike Plaintiff's Exhibit A
in Opposition to Defendant's Motion for Summary Judgment is Granted**

Defendant moves to strike Exhibit A to plaintiff's opposition to the motion for summary judgment. The document is an email exchange between defendant and a representative of U.S. Bank on September 14, 2005.

Discovery in this adversary proceeding has been contentious. The trustee sought a protective order against discovery he argued was overbroad and burdensome, in part because it sought documents outside the time period relevant to his Complaint. A special master was appointed; and, on his recommendation, discovery in this case was restricted by Court order to the calendar years 2006, 2007, and 2008.[27] The trustee benefited from the limitation, objecting and refusing to produce documents outside the 2006-2008 time period. Yet, here, the plaintiff introduces a document outside the allowed discovery time frame. To allow plaintiff to use documents that the defendant could not obtain is unfair.

Given this history, defendant's Motion to Strike[28] is granted. Exhibit A attached to the plaintiff's opposition to the motion for summary judgment is stricken. The plaintiff may not use it for any purpose.

**Defendant's Motion to Strike Declarations Submitted by Plaintiff
in Opposition to Defendant's Motion for Summary Judgment is Denied**

Defendant moves to strike the declarations of John Rizzo, Scott Hargrove, and Dee LeFever, attached as exhibits to plaintiff's opposition to the motion for summary judgment. Defendant contends that Rizzo's and Hargrove's declarations provide expert testimony that

---

[26] Doc. No. 149.
[27] Doc. No. 66.
[28] Doc. No. 181.

should not be allowed because these witnesses were not designated as experts by the trustee in compliance with Fed. R. Civ. P. 26(a)(2) and because they rely on hearsay. He further objects to Rizzo's declaration as barred by the best evidence rule and contradictory of his deposition testimony. Defendant objects to LeFever's declaration on the ground it contains hearsay statements.

The trustee did not designate and does not offer Rizzo and Hargrove as experts. Their declarations offer proper lay witness testimony, including opinion testimony, to the extent the opinions are based on facts observed by the witnesses themselves. The declarations contain Rizzo and Hargrove's opinions based on these witnesses' reviews of NACI's business records and financial documents. Lay witness testimony may include "opinions or inferences if they are '(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'"[29] Lay witness testimony properly includes summaries of financial documents reviewed by the witness, even if the witness is a financial professional.[30]

Rizzo's statement that cash NACI obtained from liquidation of customer money market accounts was used to fund settlement obligations and pay administrative expenses is not barred by the best evidence rule. The rule is stated in Federal Rule of Evidence 1002: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." "The best evidence rule applies where the party presenting evidence seeks to prove the specific contents of a writing."[31] It does not apply here, where the

---

[29] *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (applying Fed. R. Evid. 701).

[30] *United States v. Hamaker*, 455 F.3d 1331-32 (11th Cir. 2006).

[31] *Telecom Technical Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th. Cir. 2004) (citing *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994)).

trustee seeks to prove a factual circumstance other than the contents of a writing.[32]    While financial documents may be more detailed evidence of how the cash derived from the money market liquidations was used, the best evidence rule does not preclude testimonial evidence on the question.[33]

If Rizzo's testimony at trial contradicts his prior sworn testimony, defendant's counsel may use the contradiction to impeach Rizzo.  This is not a legitimate reason to strike the declaration offered in opposition to summary judgment.[34]

Plaintiff did not timely designate Rizzo and Hargrove as experts and, as such, they cannot testify at trial as experts.  They can provide limited lay witness testimony pursuant to Federal Rule of Evidence 701.  The Court will rule on any objections to their testimony on a contemporaneous basis.  Opinion testimony by Rizzo and Hargrove that is based on the opinions of others or upon their general experience will not be admitted; such opinions are the province of experts, and Rizzo and Hargrove were not designated as such.[35]

The Court also will not strike the declaration of Lefever, the great majority of which consists of Lefever's account of what she knew as a result of her first-hand experience as an employee at NACI.  The Court will rule on contemporaneous objections to Lefever's testimony at the time it is offered.

Defendant's Motion to Strike the Declarations[36] is denied.

---

[32] *See United States v. Castro*, 89 F.3d 1443, 1455 (11th Cir. 1996) (finding that the best evidence rule did not prevent the government from using testimony, rather than a detailed federal fund report, to show that a county received federal grants).

[33] *See Telecom*, 388 F.3d at 830 (holding testimony or documentary evidence could be admitted "[b]ecause [the party] sought to demonstrate a company policy, not specific terms of any contract . . .").

[34] 10B Charles Alan Wright et al., *Federal Practice & Procedure* § 2738, at 334 (3d ed. 2012) ("a witness' affidavit will not be automatically excluded because it conflicts with the witness' earlier or later deposition . . . .").

[35] *See Jayyousi*, 657 F.3d at 1104.

[36] Doc. No. 182.

<u>Defendant's Motion in Limine for an
Adverse Inference Due to Spoliation of Evidence is Denied</u>

Defendant lastly seeks a finding that documents destroyed by the trustee demonstrate the Payments reimbursed defendant for legitimate business expenses.  He bases his request on his affidavit, in which he states he found twenty-five garbage bags of shredded documents outside the NACI premises when NACI's premises were vacated on February 22, 2009, and on Exhibit B to the motion, which is a forty-five-page compilation of shredded documents defendant attempted to reconstruct.  Defendant maintains the documents were destroyed on the trustee's watch, in violation of the District Court's Records Preservation Order.

Nothing in defendant's motion persuades the Court that documents demonstrating that the Payments were reimbursements of business expenses existed at *any* time, much less during the tenure of the trustee.  The Court has reviewed Exhibit B, which is nearly indecipherable.  To the extent the Court can make sense of Exhibit B, it finds no relationship between Exhibit B and the Payments the trustee seeks to recover (identified in Exhibit A to the Complaint).  There are no receipts for Payments to defendant's credit card company or vendors listed on Exhibit A to the Complaint.  There is no reimbursement request from defendant to NACI.  Exhibit B to the motion provides no explanation at all for the basis of the Payments.

Furthermore, "[i]n this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith."[37]  Because the defendant fails to demonstrate the documents about which he seeks the inference ever even existed, the Court cannot find that the trustee destroyed any such documents in bad faith.

The Motion in Limine for an Adverse Inference[38] is denied.

---

[37] *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997).
[38] Doc. No. 177.

In conclusion, the Court simultaneously will issue separate orders consistent with this Memorandum Opinion.  A non-evidentiary pretrial conference is set for **11:00 a.m. on June 14, 2012**.

DONE AND ORDERED in Orlando, Florida, on May 8, 2012.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Copies provided to:

Plaintiff's Counsel:  Franck D. Chantayan, Carlton Fields PA, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL  33401

Defendant's Counsel:  Eric Lee, Lee & Amtzis PL, 5550 Glades Road, Suite 401, Boca Raton, FL  33431